## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| **NEAL BLANKENSHIP** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **EMMA GAY BLANKENSHIP** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     <u>**CASE NO.:**</u> |
| | ) |
| | ) |
| **CONSOLIDATION COAL COMPANY,** | ) |
| **a Delaware Corporation,** | ) |
| | ) |
| **Serve: CT Corporation System, Registered Agent** | ) |
| **4701 Cox Road, Suite 301** | ) |
| **Glen Allen, Virginia 23060** | ) |
| | ) |
| **ISLAND CREEK COAL COMPANY,** | ) |
| **a Delaware Corporation** | ) |
| | ) |
| **Serve: CT Corporation System, Registered Agent** | ) |
| **4701 Cox Road, Suite 301** | ) |
| **Glen Allen, Virginia 23060** | ) |
| | ) |
| **CONSOL ENERGY, INC,** | ) |
| **a Delaware Corporation,** | ) |
| | ) |
| **Serve: CT Corporation System, Registered Agent** | ) |
| **4701 Cox Road, Suite 301** | ) |
| **Glen Allen, Virginia 23060** | ) |
| | ) |
| **Defendants.** | ) |

1

## COMPLAINT

Comes now the Plaintiffs, by and through counsel, and move for judgment and relief against the Defendants referenced above, and states as follows:

## STATEMENT OF SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 USC Sect. 1332 (Diversity of Citizenship). The action, *inter alia*, alleges the Defendants, of diverse citizenship from the Plaintiffs, dump of contaminants into the Plaintiffs' void spaces, without authorization, as more particularly set out below, and the amount in controversy exceeds $75,000.00. Venue is proper pursuant to 28 U.S.C. § 1391 in that the property on which this action is based is located within the judicial district covered by this Court.

## FACTS REGARDING THE PARTIES

In support of their Complaint, Plaintiffs state as follows:

1.      Plaintiffs are residents and citizens of Virginia and are the owners of land within the Sealed Beatrice Gob and Beatrice Mine Complex located in Buchanan County, Virginia.

2.      Consolidation Coal Company, hereinafter referred to as "Consolidation," is an entity engaged in business of, among other things, mining, processing and transporting coal. It is incorporated under the laws of Delaware and has its principal place of business in Pennsylvania.

3.      Island Creek Coal Company, hereinafter referred to as "Island Creek," is an entity which, historically was engaged in the business of, among other things, mining, processing and transporting coal and gas (including coal bed methane). It is incorporated

under the laws of the State of Delaware and has its principal place of business in Pennsylvania.

4.      Consol Energy, Inc., hereinafter referred to as "Consol Energy," is an entity engaged in business of, among other things, mining, processing and transporting coal and gas (including coal bed methane).  It is incorporated under the laws of the State of Delaware and has its principal place of business in Pennsylvania.

### Facts Regarding Plaintiff's Property

5.      Plaintiffs are the owners of real property in Buchanan County, Virginia. Plaintiff's ownership, less the coal, gas and mineral estate. Plaintiff's property include portions of the Beatrice Mine Complex ("Beatrice").  The Plaintiffs seek redress for trespass to their properties lying within the Beatrice mining voids.

6.      Plaintiffs were conveyed the properties that are the subject of this suit ("the Beatrice Tracts") by Deeds attached and incorporated by reference herein as is more fully set out as **(Exhibit 1)**; The deed severing the coal from under these tracts, as well as certain ancillary rights is attached and incorporated by reference hereto marked **(Exhibit 2 and 3)**. A copy of the map used for the "Establishment of the Boundaries of a Provisional Sealed Gob Area of the Beatrice Mine", Docket No. VGOB 96-0618-0545, with the severance deed area highlighted in yellow along with the mined areas of the Pocahontas 3 seam voids is attached and incorporated by reference hereto marked **(Exhibit 4)**.

7.      A Virginia statute, adopted in 1981, provides that except as otherwise provided in the severance deed, the owner of the minerals "shall be presumed to be the owner of the shell, container chamber, passage, and space opened underground for the

*removal of the minerals*, with full *right to haul and transport minerals* from other lands and *to pass men, materials, equipment, water and air through such space."* Va. Code Ann. 55-154.2(A). (Emphasis added) It is further provided in the statute that these provisions "shall not affect contractual obligations and agreements entered into prior to July 1, 1981." "The statute clearly presumes the coal owner has ownership rights to the container for the limited purposes associated with coal production and not for the purpose of ownership rights to other mineral estates not conveyed to the coal owner. However, once the coal is mined, ownership of the remaining shell reverts back to the grantor. See *Clayburn v. Camilla Red Ash Coal Co., 128 Va. 383, 105 S.E. 117 (1920).* Contrary to the coal owner's argument, the Court does not find that "the broad underground rights granted to defendants in the coal severance deeds indicate an intention to convey the container as well." (Emphasis added) Judge Keary R. Williams, December 6, 2002 Amendment to Opinion Letter dated August 29, 2002, Page 7, Paragraph 1, Lines 12 through 22; Donald Ratliff and Anna Pearl Ratliff, et al. v. Harrison Wyatt, LLC, et al. Chancery Case No. 187-00, Commonwealth of Virginia Twenty Ninth Judicial Circuit for Buchanan County.

8. The statute is not applicable to the plaintiff's lands because the severance deed, a contract, was entered into in prior to 1981, and is therefore controlling. Furthermore, the statute expressly, specifically and explicitly states and describes the rights granted to the mineral owner as dynamic in nature, specific to the activities of mining and removing of the mineral and active support functions of mining. The statute expressly does not allow for storage of contaminated water or otherwise encumbering the land after the mineral is exhausted and the void spaces abandoned as an active coal mine.

4

The coal in the Pocahontas No. 3 seam on the plaintiff's specific tracts was exhausted by longwall and room and pillar mining prior to 1972. Active mining ceased at the sealing of the Beatrice Mine as a whole on June 23, 1987.

### Facts Regarding Actions of Defendants

9.      Defendant Island Creek mined, removed, and exhausted, the Pocahontas 3 (Poca 3) seam under the Plaintiffs' tracts as part of the Beatrice Mine complex prior to 1981. Mining methods included a combination of room and pillar and longwall mining methods.  Thereafter the tracts were utilized as airways until the mine was sealed June 23, 1987. A copy of the Beatrice Mine Map Legend submitted to the Virginia Division of Mines July 22, 1993, is attached hereto and incorporated herein marked **(Exhibit 5).**

10.      The Beatrice Mine was permitted by Island Creek Coal Company under the Virginia Department of Mines, Minerals and Energy, Division of Mined Land Reclamation permit number 1400493. On April 8, 1994 Island Creek Coal Company filed and gained field approval by the Virginia Department of Mined Land Reclamation. ("VDMLR"), inspector for the filling and sealing of the access and ventilation shafts to the Beatrice Mine, Ventilation Shafts A, B and C. Island Creek stated that filling operations for shaft A had begun March 30, 1994. Island Creek filed and gained field approval for filling and sealing Ventilation Shafts D, E and F on October 28, 1994. By letter dated January 26, 1995, from Mark A. Swartz, attorney for Buchanan Production Company and Consol, Inc., to Byron T. Fulmer, Department of Mines, Minerals and Energy's Division of Gas and Oil, the Board was advised of the completion of sealing of the Beatrice Mine located in the Pocahontas No. 3 seam underlying subject lands as of January 26, 1995. A copy of the Virginia Gas and Oil Board Order Docket No. 96-0618-

0545, November 6, 1996, referencing the said letter is attached hereto and incorporated herein as **(Exhibit 6).**

11.     By filling all access shafts to the Beatrice Mine, Island Creek Coal Company eliminated its ability to re-enter the Beatrice Mine and abandoned the mine. The mining and removal of the Pocahontas 3 coal seam left void spaces under the tracts, ownership of which said void spaces reverted to the Plaintiffs upon the mining and removal of the coal seam, subject to the remaining uses specifically reserved in the previously referenced severance deed.

12.     Upon sealing and abandonment of the Beatrice Mine, the void spaces in the Pocahontas 3 coal seam are no longer accessible to the coal owner for any of the uses stated in the severance deed. Furthermore, Consolidation has represented in court documents filed November 2, 2006 in the Circuit Court of Buchanan County, Virginia, Case No. CL04-91, (*Yukon Pocahontas Coal Company, LP and LLP, et al v. Consolidation Coal Company, et al)*, III Answer and Affirmative Defenses to Plaintiffs First Amended Complaint, A. Answer, paragraph 11, lines 8 and 9, "These Defendants expressly deny that there is any amount, substantial or otherwise, of "un-mined and marketable coal" in the Beatrice Mine." A copy of pages 1, 5, 6, and 7 of the pleading is attached hereto and incorporated herein as **(Exhibit 7).**

13.     By virtue of exhaustion, (as referenced above by mining and Defendants own statements), and abandonment, (as referenced by Defendants' actions of  sealing off all access shafts to the Beatrice mine premises), the ownership of the empty void space once occupied by the coal reverts to the grantor of the coal by operation of law under *Clayborn v. Camilla Red Ash Coal Co*., 128 Va. 383, 105 S.E. 117, 119 (1920) (holding

that the coal owner has only an interest in the coal itself, with the "necessary incidental easement to use the containing walls for support and for the purpose of getting "the coal out").  The Defendant Consolidation's unauthorized trespass by storage of contaminated water from its Buchanan No. 1 mine, in Plaintiff's above-referenced void spaces, forms the basis of this case.

14.     Since before 1993, Consolidation has conducted mining operations at its Buchanan No. 1 Mine on real property located adjacent to, and up-dip from, the Beatrice Mine in Buchanan County, Virginia.  Consolidation Coal Company has operated the Buchanan No. 1 Mine in Buchanan County, Virginia under VDMLR Permit No. 1400047, issued March 8, 1983.

15.     During the course of its mining operations, and in furtherance thereof, Consolidation realized the need to evacuate substantial quantities of pollutants, contaminants, hazardous substances and water from its Buchanan mine operations. These pollutants, contaminants and hazardous substances were contained within a mixture of untreated water produced from the mining operations for the Buchanan No. 1 Mine. This mixture is hereinafter referenced as the "Contaminants."

16.     Consolidation had three (3) alternatives to negotiating a storage agreement with the plaintiffs:  (1) allow the water to build up to the point of forcing  closure of the Buchanan No. 1 Mine; (2) request a waiver from the Virginia Department of Environmental Quality and associated state and federal agencies to discharge the water and contaminants into the waters of the United States; or, (3) revise the mine permit and build a waste water treatment plant designed to remove the specific contaminants from

the contaminated mine water. In 1993, Consolidation's parent company, Consol Energy, purchased a beneficial ownership interest in Island Creek.

17.     On October 28, 1993, Consolidation filed a revision to plans with the Virginia Department of Mines, Minerals and Energy, Division of Mined Land Reclamation for its Buchanan No. 1 Mine, (VDMLR Permit No. 1400047, Revision No. 9406034), to "Transfer mine water from the Buchanan Mine to the Beatrice Mine via overland pipe". The pipeline contained 600 feet of 4" pipe and the remaining 3100' was 6" pipe. The narrative of this revision states: *"Since the North Gob Area of the Buchanan Mine was permanently sealed, water has been building up in it. The water has reached a point where it could pose a threat to continued mine ventilation of one of our bleeder systems. The Beatrice Mine was recently acquired by CONSOL as part of the purchase of Island Creek Coal Company. Since this mine lies down dip of the Buchanan Mine, the bulk of its works lie below those of Buchanan's. This mine is practically dry and large enough to provide an almost indefinite containment area in which to pump Buchanan Mine water."* (emphasis added) The revision is attached hereto and incorporated herein marked **(Exhibit 8).**

18.     The right of entry information provided for in Exhibit 8 did not include reference to the plaintiff's tracts. The Public Notice filed in the <u>Richlands News Press</u> stated "Consolidation Coal Company, P. O. Box 1289, Bluefield, Virginia, is applying to the Virginia Division of Mined Land Reclamation for a revision to Permit No. 1400047 in order to establish a new dewatering pump system for the Buchanan Mine". The Public Notice was filed in the <u>Richlands News Press</u> in a weekly paper of general circulation in only Tazewell County, not Buchanan. There is absolutely nothing contained in the public

notice that would indicate to anyone that Consolidation sought to discharge mine water into the Beatrice Mine. This "notice" was deceptive and was made with the specific intent to keep Plaintiffs from learning of Consolidation's plans to dump the Contaminants into the Beatrice Mine. All public notices previously and henceforth concerning the Buchanan Mine Permit No. 1400047 have been filed in the <u>Virginia Mountaineer</u>, a weekly paper of general circulation in Buchanan County.

19.     Consolidation then constructed 4 horizontal drainage holes from the Buchanan No. 1 Mine into the sealed Beatrice Mine beginning in December 1996 and continuing through January 1997 to pump or drain the contaminated mine water into the Beatrice Mine. The drain holes were constructed in a manner, and under conditions, that precluded the possibility that Plaintiffs might discover their existence, and thus protect their interests. These plans for additional drainage capacity were not authorized by the VDMLR or reported to them. No public notice of the additional drainage holes was published. A copy of the Virginia Division of Mines Inspection Reports for December 11, 1996 and January 14, 1997 are attached hereto and incorporated herein marked **(Exhibit 9)** and **(Exhibit 10)**.

20.     No other records exist at the Virginia Division of Mines, or in the Buchanan No. 1 Mine files of the Mine Safety and Health Administration District 5, of the approved plans to install these horizontal holes even though state and federal mine safety laws require approval to drill into any portion of an adjacent abandoned mine. A copy of the Freedom of Information Act Requests and the answers by Greg Mykel, MSHA District 5 manager and Mike Willis of the Virginia division of Mines are attached hereto and incorporated herein marked **(Exhibit 11)** and **(Exhibit 12)**. A copy of a

portion of the map of the Buchanan No. 1 Mine showing the 4 drainage holes drilled into Beatrice, Certified by J.K. Gilmer, JR. VAPE No. 019434 and dated 6/28/01 submitted to the Virginia Division of Mines is attached hereto and incorporated herein marked **(Exhibit 13)**.    A copy of a portion of the map of the Buchanan No. 1 Mine submitted to the Virginia Division of Mines as File No. 2013Revised2state05_03 is attached hereto and incorporated herein marked **(Exhibit 14)**.    The 4 drainage holes connecting the abandoned Beatrice Mine and the Buchanan No. 1 Mine have been removed in violation of 30 CFR  §75.1200.

21.    Consolidation has used pumps and pipes to transport the contaminants, including, but not limited to, dangerously high levels of sodium chloride levels, and placed said contaminants into the void spaces within Plaintiffs' previously referenced property, converting the same into a storage tank for contaminants.  By these actions, Consolidation has released hazardous substances and/or pollutants or contaminants into the environment from a facility as those terms are defined in 42 U.S.C. § 9601.  Plaintiffs have not undertaken any cleanup of the resulting damage, nor have they incurred any cleanup costs individually or pursuant to a governmental order or directive.

22.    The Plaintiffs have suffered property damages that have been caused by Consolidation's actions in releasing the Contaminants into Plaintiff's property, converting the same into storage tanks, and resulting in the claims set forth herein under Virginia law.  As such, any cause of action for property damages associated with Consolidation's actions did not accrue until the Plaintiffs knew or reasonably should have known of the property damages caused by Consolidation's actions.  42 U.S.C. § 9658. Plaintiffs did not know or have reason to know of Consolidation's actions until

2009. The Contaminants contained, and contain extremely high levels of total suspended solids, total dissolved solids, chlorides, sodium and other pollutants and/or hazardous substances contaminants as defined under 42 U.S.C. §9601(33) and/or hazardous substances as defined under 42 U.S.C. §9601(14) and regulations promulgated thereunder.

23. The Contaminants were elements, substances, compounds or mixtures, which, are released into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, would cause or may be reasonable anticipated to cause death, disease, behavior abnormalities, cancer, genetic mutation, physiological malfunctions or physical deformations in such organisms or their offspring, and/or were "hazardous substances" as defined in 42 U.S.C. §9601(14), which chapter is more commonly known as the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

24. The Defendants have damaged the Plaintiff's property by the unauthorized release of hazardous substances and/or pollutants or contaminants into the environment from a facility as those terms are defined by CERCLA in 42 U.S.C. §9601. The analysis of the contaminated mine water is shown in the "Buchanan Mine Water Study – EMI Project No. 921.12" and the "Buchanan Mine Water Quality Summary". In these analysis the mine water contaminate concentration is compared to contaminate levels that are harmful to Human Health and Freshwater Aquatic Life under the Virginia Water Quality Standards (VA 25-260). These analysis sheets were provided to the VDMLR in the Revision to Plans for the Buchanan No. 1 Mine Permit No. 1400047, Application No.

1002883, and are attached hereto and incorporated herein marked **(Exhibit 15)** and **(Exhibit 16).** These exhibits, previously submitted to the Department of Mines, Minerals and Energy and the Department of Environmental Quality clearly show that the concentration level of the Contaminants in the Buchanan mine water to be hazardous substances and/ or pollutants as defined in CERCLA.

25. Because the Contaminants contained a mixture that could not be safely or legally released into the waterways or onto the surface lands of Virginia, Consolidation determined that it would secretly place the Contaminants into the open spaces, i.e., the voids created by mining activity, underground on Plaintiff's Beatrice Tracts. Consolidation dumped the Contaminants on the Plaintiff's Beatrice Tracts only because they contained pollutants, contaminants or hazardous substances. The volume of contaminates and water pumped or drained into the Plaintiff's property exceeded 80 million gallons.

26. Consolidation affirmatively concealed its actions in dumping the contaminants onto Plaintiff's Beatrice Tracts. As a result, Plaintiff's Beatrice Tracts have now been flooded with millions of gallons of Contaminants.

27. Consolidation's actions in placing Contaminants in Plaintiff's Beatrice Tracts constituted a willful trespass which is continuing, committed in bad faith, with actual and implied knowledge that it had no right, title or interest in Plaintiff's property which would allow it to do so, or with gross negligence and reckless disregard as to the Plaintiff's rights.

28.     As a result of Consolidation's actions in dumping or causing the Contaminants to be placed under, on and in, Plaintiff's Beatrice Tracts, Consolidation has destroyed or substantially reduced the value of Plaintiff's interests in such property.

29.   From the time Consolidation began dumping or causing the Contaminants to be placed in Plaintiff's Beatrice Tracts, Consolidation, Island Creek, and Consol Energy have intentionally concealed and suppressed this dumping from Plaintiffs, notwithstanding their duty to disclose such material facts.

30.     Consolidation, Island Creek, and Consol Energy have concealed and suppressed such facts by, inter alia, not notifying the Plaintiffs when their identity was known, and deliberately advertising notice of the permit revision in a weekly paper in another county, knowing it was not circulated in Buchanan County. Moreover, Defendants knew, or should have known, that Plaintiffs were acting upon the assumption that Consolidation was not flooding Plaintiffs' Beatrice tracts. Plaintiffs were misled, to their detriment, by the concealment and suppression by Consolidation, Island Creek, and Consol Energy that they were illegally flooding Plaintiffs' property with Contaminants.

31.     Such concealment and suppression by Consolidation, Island Creek, and Consol Energy was intentional and knowing, with the intent to mislead.  Consolidation knew, or should have known, that its actions in dumping or otherwise placing the Contaminants in the Beatrice Mine (including within and against the Beatrice Tracts) would cause great injury to Plaintiff's property interests. Consolidation chose to place the Contaminants onto Plaintiff's property (thus damaging Plaintiff's property interests) because the cost of properly treating and disposing of the Contaminants was high and regulatory approval and construction of a treatment system was a time consuming process

and could not be brought to a conclusion in a time frame that would allow the continued operation of the Buchanan No. 1 Mine.

32.    Consolidation also knew or should have known that it had no legal right to place the Contaminants onto Plaintiff's property, but chose to do so anyway. Consolidation's actions have been reckless, wanton and a willful disregard for the Plaintiff's property rights and interests.  Consolidation has benefited from its tortious trespass to Plaintiff's property by saving the costs it would have otherwise incurred for the proper disposal of the Contaminants and by the extraordinary profits realized from the continuing and ongoing operations at its Buchanan No. 1 Mine, including the production of coalbed methane from the sealed gob units BUN1, BUNE1, BUS1 and BUS2.

33.    Consol has continued to obfuscate the public record relative to their actions even through to the present, by filing an inaccurate map of the Buchanan No.1 Mine with the Virginia Division of Mines in May 2013, which fails to show that the 4 drainage holes between the Beatrice Mine and the Buchanan No. 1 mine exist; as well as preventing the manager of MSHA District 5 from complying with the Freedom of Information Act request for portions of the Buchanan No. 1 Mine map MSHA Tracking No. 737074 filed December 26, 2013. The MSHA answers and extensions to comply dated   January 21, 2014 and February 18, 2014 are attached hereto and incorporated herein marked **(Exhibit 17)** and **(Exhibit 18).** The requested information has not been received as of May 7, 2014. These actions deceive the public as to the existence of the drainage holes, and their impact to the Beatrice void spaces.

## Count I-Trespass Against Consolidation

34.     Plaintiffs restate the preceding paragraphs' allegations and incorporates the same herein by reference and alleges the following grounds for relieve:

35.     Consolidation has purposefully, intentionally, willfully, wantonly, maliciously, and in bad faith, trespassed on Plaintiff's property by placing the Contaminants thereon, causing the damages alleged above.  Consolidation has acted without authority to do so, and in direct interference with Plaintiff's interests in and to the property.

WHEREFORE, your Plaintiffs ask for judgment against Consolidation for damages in an amount as shall be established at the trial of the case for damages to the void space in the amount of $1,000,000.00, together with costs, pre-judgment interests, post judgment interests, attorneys' fees, and such other relief as the Court may deem proper.

## Count II-Trespass-*Assumpsit* Against Consolidation and CONSOL

36.     Plaintiffs restate the preceding paragraphs' allegations and incorporates the same herein by reference and alleges the following grounds of alternative relief.

37.      Consolidation and CONSOL and have been unjustly enriched by unlawfully placing, arranging placement, or allowing placement, of the Contaminants onto and into voids within Plaintiff's properties; coordinating among themselves for such unlawful trespass and use of Plaintiffs' property.  The voids in Plaintiff's properties were uniquely situated so as to be valuable to Consolidation and CONSOL for storing contaminated water, lying down dip and adjacent to Buchanan No. 1 Mine. By dumping or otherwise causing the Contaminants to be placed onto or in Plaintiff's void spaces

rather than properly disposing of the same, Consolidation and CONSOL have been unjustly enriched by : (1) the amount of money that the Plaintiffs would have agreed to accept as consideration for allowing Consolidation's actions had Consolidation negotiated in good faith with the Plaintiff to pay the fair value for such; (2) the amount that Consolidation would have otherwise paid for the proper disposal of the Contaminants in a lawful manner without trespassing on the Plaintiff's properties; and/or (3) by all or some portion (as the jury may determine to be appropriate) of its profits from the continued operation of the Buchanan Mine, as well as CBM production which were allowed and continue to be allowed by dumping of the Contaminants on and in the Beatrice Mine. On information and belief, the proper disposal of the Contaminants would have costs Consolidation in excess of $200,000,000. Consolidation has profited from its continuing operation of Buchanan Mine in excess of $300,000,000. CONSOL and Consolidation also profited from the production of gas, including CBM, from Buchanan 1 advance mining degasification, and Buchanan 1 GOB unit production, in an amount in excess of $100,000,000.00.

38.     Therefore, Defendants have profited unlawfully in an amount in excess of $400,000,000 through their wrongful action.

39.     Under these facts, the law of Virginia requires Defendants to pay the fair value of its benefit by trespassing on the Subject Property.

WHEREFORE, in the alternative to the relief requested in Count I, Plaintiffs ask for judgment against Consolidation in the amount of $500,000,000, together with costs, pre-judgment interests, post-judgment interests, attorneys' fees, and such other relief as the Court may deem proper.

## **Count III- Negligence and/or Gross Negligence Against Consolidation**

40.     Plaintiffs restate the proceeding paragraphs' allegations and incorporates the same herein by reference and alleges the following grounds of relief in the alternative Count I.

41.     Consolidation had and has a duty to use reasonable care in conducting its mining operations so as not to harm the real property, mineral and business interests of others, including Plaintiff's herein.

42.     Consolidation has breached its duty by conducting its operations in such a way that the Contaminants have been dumped or otherwise placed onto or in Plaintiff's property.

43.     As a Direct and proximate result thereof, the Plaintiff's property interests have been damaged as alleged above.

44.     Consolidation has been negligent and is liable to Plaintiffs for compensatory damages and costs.

45.     The negligence of consolidation was willful, wanton, intentional and reckless, and evinced a conscious disregard for the rights of the Plaintiffs.

WHEREFORE, in the alternative to the relief requested in the counts above, Plaintiffs ask for judgment against Consolidation in the amount of $14,000,000.00, either alone or, if the Court finds that Consolidation acted in a manner that was willful, wanton, intentional and reckless, and evinced a conscious disregard for the rights of Plaintiffs, then together with punitive damages in the amount of $350,000.00 per each individual

instance of trespass, together with costs, pre-judgment interest, post-judgment interest, attorneys' fees, and such other relief as the Court shall deem proper.

### Count IV-Nuisance Against Consolidation

46.    Plaintiffs restate the preceding paragraphs' allegations and incorporates the same herein by reference and alleges the following grounds for relief in the alternative Count I.

47.    The manner which Consolidation has conducted and continues to conduct, its business operations by storing contaminated water as described above, obstructs and interferes with Plaintiff's reasonable use of their properties.

48.    The actions of Consolidation constitute a nuisance.

49.    Consolidation is liable to Plaintiffs for compensatory damages, reasonable attorneys' fees and costs.

WHEREFORE, in the alternative to the relief requested in Count I, Plaintiffs ask for judgment against Consolidation in the amount of $14,000,000.00, together with costs, pre-judgment interest and post-judgment interest, attorneys' fees, and such other relief as the Court shall deem proper.

### Count V-Waste Against Island Creek

50.    Plaintiffs restate the preceding paragraphs' allegations and incorporates the same herein by reference and alleges the following grounds for relief.

51.    During its control of the properties at issue, Island Creek committed waste on those properties by allowing and assisting in the flooding of the Beatrice Mine (including the Beatrice Tract) with the Contaminants from Consolidation's Buchanan No. 1 Mine operations without authority or any right to do so.

52.     As a direct and proximate result, Plaintiff's real property interests (including the quiet and peaceful enjoyment of their void space and gas estate have suffer a direct loss.

53.     Such waste was committed wantonly by Island Creek entitling Plaintiffs to double the amount of damages assessed therefore pursuant to Virginia Code Ann. §55-214.

WHEREFORE, Plaintiffs ask for judgment against Island Creek in the amount of $14,000,000.00 with such award to be doubled to $28,000,000.00 upon a finding that Island Creek acted wantonly, together with costs, pre-judgment interest, post-judgment interest, attorneys' fees and such other relief as the Court shall deem proper.

### Count VI-Waste Against CONSOL and Consolidation

54.     Plaintiffs restate the preceding paragraphs' allegations and incorporates the same herein by reference and alleges the following grounds for relief.

55.     In the process of its mining operations of Buchanan No. 1 mine, Consolidation committed waste on Plaintiffs' properties by releasing from their facility into the Beatrice Mine (including the Beatrice Tract) Contaminants from Consolidation's Buchanan No. 1 Mine operations without authority or any right to do so, all as coordinated by CONSOL.

56.     As a direct and proximate result, Plaintiff's real property interests (including the quiet and peaceful enjoyment of their void space have suffer a direct loss.

57.     Such waste was committed wantonly by Consolidation and CONSOL entitling Plaintiff to double the amount of damages assessed therefore pursuant to Virginia Code Ann. §55-214.

WHEREFORE, Plaintiffs ask for judgment against Consolidation and CONSOL in the amount of $14,000,000.00 with such award to be doubled to $28,000,000.00 upon a finding that Consolidation acted wantonly, together with costs, pre-judgment interest, post-judgment interest, attorneys' fees and such other relief as the Court shall deem proper.

### Count VII-Request for Injunctive Relief Against Consolidation

58. Plaintiffs restate the preceding paragraphs' allegations and incorporates the same herein by reference and alleges the following grounds of relief in the alternative to all Counts herein seeking award of money damages as a result of the actions by the Defendants as to the distinct dumping operations relative to the Beatrice Mine Considered separately.

59. Plaintiffs ask that this claim be bifurcated and heard separately, if at all, following the conclusion of the trial of this case on the monetary relief sought in this case. Such Count would only be prosecuted further if needed due to the inadequate remedy at law which may occur in any number of events, including, without limitation the following:

a. In the event that the Defendants are successful on motions seeking to strike or limit Plaintiff's before or after the jury renders a verdict thus precluding a final verdict resolving all claims for past and future damages;

b. In the event that the jury returns a verdict on assumpsit for Plaintiffs that only awards relief as to past benefits that Consolidation has enjoyed through its dumping water into Plaintiff's voids, but not as to the future storage of the waste water in such

voids. In the event, that the Court may need to equitable jurisdiction provided by this Count in order to afford completer relief; and/or

c.      In the event that the Plaintiffs do not receive an award of damages sufficient to compensate for their past and future dumping and storage of waste water into Plaintiffs' voids.

60.      Unless and until the Contaminates are removed by Consolidation from Plaintiff's properties or Plaintiffs receive a final verdict in this case awarding adequate damages for both past dumping and future storage of waste water in the voids, Plaintiffs will have suffered an irreparable injury for which there is no adequate remedy at law.

61.      In the alternative, Plaintiffs request the entry of an Order compelling Consolidation to remove the Contaminates from Plaintiffs' voids, and to take such steps as would ensure that Consolidation's Contaminants do not, once again, return to Plaintiff's properties.

WHEREFORE, Plaintiffs ask that the Court Bifurcate this claim but reserve the right to render full and complete justice in this case as may be necessary through a judgment against Consolidation, as follows:

a. Entry of an Order enjoining and compelling Consolidation to remove the Contaminants from the Plaintiffs' voids in such a way as to not cause Plaintiff's coal bed methane property interests to be dissipated or wasted and in such a way as to remove any residual Contaminants from Plaintiff's voids, gas estates and other property interests, and to take such steps as would ensure that Consolidation's Contaminants do not, once again, return to Plaintiff's property; and

b. Awarding Attorney's fees and costs expended in this action; and

c. Such other and further relief as the nature of this case may require, and as justice would mandate.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor in accordance with their allegations and claims for relief, along with punitive damages on each, above and award them their costs, pre-judgment interests, post-judgment interests, and such other and further relief as the Court may deem just and proper.

**PLAINTIFF REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**NEAL BLANKENSHIP, ET UX.**
**By counsel**

/s/<u>TERRENCE SHEA COOK</u>
Attorney for Neal Blankenship, et ux
VSB#34832
T. Shea Cook, P.C.
2411 Second Street
P.O. Box 507
Richlands, VA 24641
276-963-4332